# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 7936 *(92cr652+5)* | **DATE** | 5/18/2000 |
| **CASE TITLE** | United States of America vs. Robert J. Tezak | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: For the foregoing reasons, the amended Section 2255 habeas corpus petition brought by Robert Tezak is denied. Mr. Tezak's motion to recuse this Court also is denied. This is a final and appealable order.**
*(291-1)*

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

number of notices

**MAY 19 2000**
date docketed

docketing deputy initials

date mailed notice

Document Number

21

| | |
|---|---|
| TSA | courtroom deputy's initials |

Date/time received in central Clerk's Office

mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 92 CR 652 |
| v. | ) | 96 C 7936 |
| | ) | Honorable Wayne Andersen |
| ROBERT J. TEZAK, | ) | |
| | ) | |
| Respondent. | ) | |

**DOCKETED**

MAY 1 9 2000

## MEMORANDUM, OPINION & ORDER

This case is before the court on the amended petition of Robert J. Tezak for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. Also before the court is Mr. Tezak's motion to recuse this Court pursuant to 28 U.S.C. § 144. For the reasons stated below, we deny the amended petition for habeas corpus and deny the motion to recuse.

## BACKGROUND

On August 6, 1987, a fire occurred at the Galaxy Bowl in Cresthill, Illinois. Although the building was not totally destroyed, Colonial Penn Insurance Company paid $50,000 in clean up costs. A grand jury investigation regarding this fire was undertaken by the U.S. Attorney for the Northern District of Illinois. Four months later, on December 4, 1987, the three story PIC building was destroyed by fire. The PIC building housed the offices of the Private Industry Council and the Will County Center for Community Concern. Following the fire a joint federal/local arson investigation was commenced, eventually focusing on a local contractor named Stephen Kezerle as a suspect.

After a lengthy investigation, a federal grand jury in the Northern District of Illinois returned an indictment in August, 1992 charging four individuals with conspiracy and arson in connection with the Galaxy Bowl fire. In September, 1992, Robert Tezak was also charged with conspiracy and arson in regard to the Galaxy Bowl fire. This indictment was superseded on December 2, 1992 by adding conspiracy and arson charges against Mr. Tezak in connection with the PIC building fire.

Subsequently, a five count superseding information was lodged against Mr. Tezak alleging: 1) conspiracy to destroy the Galaxy Bowl by fire and to defraud Colonial Penn Insurance Company; 2) damage to real and personal property of Galaxy Bowl by fire; 3) conspiracy to destroy the building by fire and obstruct justice; 4) destruction of the PIC building and its contents by fire; and 5) obstruction of justice for threatening his former daughter-in-law, who was a potential witness. Mr. Tezak was represented by Dan Webb, George Lombardi and Susan Mahoney of Winston & Strawn. In October of 1993, Steven Popuch also began representing Mr. Tezak. James Casey, who assisted Mr. Popuch in connection with this case, was an associate in Mr. Popuch's law firm.

On October 25, 1993, Mr. Tezak pled guilty to counts one, two and five of the superseding information pursuant to a plea agreement entered into with the United States Attorney. As part of that agreement, Mr. Tezak admitted complicity in the PIC Building fire, even though the counts pertaining to that offense were to be dismissed after Mr. Tezak was sentenced on counts one, two and five. Mr. Tezak then retained the services of attorney Marsha Shein in early 1994 to act as a consultant in connection with sentencing issues.

After extensive hearings, Mr. Tezak was sentenced at a hearing on July 29, 1994. The Judgment was docketed on August 10, 1994. Mr. Tezak received a 46 month sentence on count five, a nine year consecutive term of imprisonment on count two and a consecutive term of five years

probation on count one. In addition to the period of incarceration, Mr. Tezak was also ordered to pay restitution to the Joliet Fire Department and to the insurer of the PIC building.

On September 15, 1994, Mr. Tezak filed a motion to extend the time for filing a notice of appeal, which was denied by the Court on that date. On November 29, 1994, Mr. Tezak filed a motion pursuant to Rule 35 of the Federal Rules of Criminal Procedure to reduce his sentence, which was denied by the Court on February 22, 1995. Under Rule 35 as it existed at the time, a defendant was required to file a Rule 35 motion within 120 days from the time of sentencing or the entry of a judgment. If an appeal were filed, the trial court would be divested of jurisdiction and, after the appeal process, the defendant would have 120 days to file a Rule 35 motion from the date of the mandate.

Following the imposition of the sentence, Mr. Tezak claims that he requested his attorney, Steven Popuch, to file an appeal of the sentence. Mr. Popuch denies this. Mr. Tezak claims that he desired to appeal both the consecutive nature of the sentence as well as the three point enhancement to the obstruction of justice charge.

Before this Court had ruled on Mr. Tezak's Rule 35 motion to reduce his sentence, the State's Attorney of Will County began presenting evidence to the Will County Grand Jury in contemplation of indicting Mr. Tezak on state arson charges regarding the PIC building fire. The transcript of Mr. Tezak's guilty plea colloquy with the Court on October 25, 1993 was presented to the Will County Grand Jury.

On October 26, 1995, Mr. Tezak was indicted by a Will County Grand Jury on five counts of arson, all of which related solely to the PIC building fire. Mr. Tezak's attempt to dismiss the state indictment on double jeopardy grounds was denied by the state court and upheld on appeal by the

Illinois Appellate Court, Third Judicial District in an unpublished order in case number 3-96-0612. The trial of the state case commenced on May 13, 1996. The sole evidence as to Mr. Tezak's participation in the PIC building fire presented at the state trial was the reading of the transcript of his guilty plea containing the admissions regarding the PIC fire. Mr. Tezak was convicted on all five counts of arson by a jury and was sentenced to a term of imprisonment of three years incarceration consecutive to his federal sentence. He was also ordered to pay restitution in the amount of approximately $800,000.

Mr. Tezak then filed a § 2255 petition, which was later amended, for federal habeas corpus relief in this Court. In his amended petition, Mr. Tezak claims that: 1) his Sixth Amendment right to effective assistance of counsel was violated because his lawyer allowed him to plead guilty and admit facts exposing him to state prosecution, thus depriving him of the constitutional protection of the double jeopardy clause; 2) his Sixth Amendment right to effective assistance of counsel was violated because his lawyer failed to perfect an appeal even though Mr. Tezak indicated a desire to appeal; and 3) this Court lacked subject matter jurisdiction over the arson at the Galaxy bowl.

This Court allowed discovery on the issues presented in the amended petition. In addition, on December 2, 1999, we held an evidentiary hearing on Mr. Tezak's § 2255 petition. At the hearing, Mr. Popuch and First Assistant U.S. Attorney Gary Shapiro testified.

DISCUSSION

As a preliminary matter, Mr. Tezak has filed a motion to recuse this Court from the case. Although the Court orally denied this motion on May 6, 1997 soon after the motion was filed, we indicated that we would address our reasons for the denial in our written opinion. In his motion to recuse, Mr. Tezak claims that he was the underlying target of an investigation of one of his friends,

4

John Bays, conducted by the Illinois Secretary of State's office in 1985. In support of his motion, Mr. Tezak states:

> At the time, Judge Andersen was a high ranking official in the Chicago office of that agency... [the Secretary of State's office]. As a result of Mr. Tezak's apparent attempt to assist his friend by intervening in the investigation of the Secretary of State's office, he made himself the real target of the subsequent investigation. As a result of Mr. Tezak's power and influence at the time ... Judge Andersen, while an official in the Chicago office of the Secretary of State's office had to have been aware of [these circumstances] ... and as a result, had a bias against Tezak before any information was acquired by the judge during the course of the judicial proceedings.

A motion to disqualify pursuant to 28 U.S.C. § 144 requires a showing that a presiding judge has a personal bias or prejudice against a party. United States v. Balistrieri, 779 F.2d 1191, 1198 (7th Cir. 1985). A judge is required to disqualify himself in any proceeding in which his impartiality might reasonably be questioned. A district court judge's decision not to recuse himself is reviewed under an abuse of discretion standard. 197 F.3d 266, 269 (7th Cir. 1999).

In this case, we find that, even if the allegations that Tezak was the real target of a Secretary of State investigation and that the Deputy Secretary of State would have probably had knowledge of the investigation in the motion were true, these allegations do not link this Court to the investigation of John Bays. I resigned my duties as Illinois Deputy Secretary of State in December, 1984 to assume the position of Judge of the Circuit Court of Cook County. Therefore, I had no connection with the Secretary of State's office at the time the investigation was allegedly initiated. Moreover, even when I was employed with the Secretary of State's office, my jurisdiction was focused on Cook County, and I exercised no supervisory authority over the office in Will County. Finally, I was completely unaware of this investigation until Mr. Tezak raised it in his motion. Thus,

there are simply no facts alleged to substantiate Mr. Tezak's claim that this Court had a personal bias against Mr. Tezak before this case even started.

For these reasons, we find that Mr. Tezak's motion does not present any factually based reason to question the impartiality of this Court. Therefore, Mr. Tezak's motion to recuse this Court is denied. Thus, we will now direct our attention to the merits of the § 2255 petition.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

A petitioner bears "a heavy burden in proving that [his] . . . attorney rendered ineffective assistance of counsel." United States v. Holland, 992 F.2d 687, 691 (7th Cir. 1993). In order to state a claim for ineffective assistance of counsel, Mr. Tezak must show that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment " and that his counsel's "deficient performance prejudiced the defense." United States v. Davenport, 986 F.2d 1047 (7th Cir. 1993). This test is highly deferential to the decisions of the attorney, and this Court presumes that "counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions." United States v. Jackson, 103 F.3d 561, 573 (7th Cir. 1996).

### A. The Plea Agreement

The first issue raised by the amended petition is the claim that Mr. Popuch did not provide Mr. Tezak with effective assistance of counsel in connection with Mr. Tezak's decision to plead guilty because he allowed Mr. Tezak to admit facts exposing him to state prosecution, thus depriving him of the constitutional protection of the double jeopardy clause.

"[A] voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel, may not be collaterally attacked." Mabry v. Johnson, 467 U.S. 504,

508 (1984). Mr. Tezak is entitled to relief only if he proves that: 1) his plea was not voluntary and intelligent; or 2) he did not receive the effective assistance of counsel required by the Sixth Amendment resulting in the deprivation of a constitutional right; or 3) it is clear from the "face of the record" that the Court had no power to enter the conviction and sentence.

In this case, Mr. Tezak argues that his counsel's ineffective assistance deprived him of a constitutional right not to be placed twice in jeopardy for the same offense. Mr. Tezak alleges that he agreed to plead guilty only if, by doing so, all matters regarding the two fires would be resolved. He alleges that he was assured by his counsel, Steven Popuch, that he would resolve all pending matters by pleading guilty pursuant to the plea agreement prepared by the government. Mr. Popuch advised Mr. Tezak to admit complicity in the PIC Building fire without pleading guilty to that offense and without securing an agreement from the Will County prosecution to not bring charges against Mr. Tezak. Mr. Tezak argues that Mr. Popuch's performance in failing to protect him against a subsequent prosecution by Illinois for the PIC fire was so deficient that it fell below an objective standard of reasonableness under prevailing professional norms. As a result, Mr. Tezak was subjected to a state prosecution for arson and received a three year sentence consecutive to that which he received from this Court. Thus, Mr. Tezak argues that he was deprived of the constitutional protection of the double jeopardy clause of the Fifth Amendment to the United States Constitution and was subjected to successive punishment for the same conduct.

1. The Plea Agreement Did Not Deprive Mr. Tezak Of
   The Protections Of The Double Jeopardy Clause

Count I of Mr. Tezak's amended petition is premised on an allegation that his counsel's ineffectiveness deprived him of the constitutional protection of the double jeopardy clause. We find

7

that Mr. Tezak was not deprived of the constitutional protection of the double jeopardy clause for several reasons.

First, no double jeopardy violation occurred in this Court because Mr. Tezak pled guilty and was sentenced on the charges in this case _before_ he was indicted, tried, convicted and sentenced in state court. Therefore, no double jeopardy violation taints his _federal_ conviction. If the double jeopardy clause were violated, which it was not, then it was violated by Mr. Tezak's subsequent state conviction and sentence. This § 2255 petition is not the proper procedure for attacking the state conviction and sentence.

Second, no deprivation of a federal constitutional right occurs when a state convicts a defendant of a state crime that arises out of the same evidentiary facts as a previously adjudicated federal criminal offense. The "dual sovereignty doctrine" allows the federal government and a state government, or two state governments, to bring successive prosecutions for offenses arising from the same criminal act. Abbate v. United States, 359 U. S. 187, 196 (1959); Bartkus v. United States, 359 U.S. 121, 128-29 (1959); Heath v. Alabama, 474 U.S. 82,88 (1985).

Third, it is clear that, while the double jeopardy clause bars courts from punishing defendants twice for the same offense, the Supreme Court has held that consideration of uncharged relevant conduct in determining a defendant's sentence under the federal sentencing guidelines does not constitute punishment for that conduct. Therefore, double jeopardy does not bar a subsequent prosecution for that conduct. Witte v. United States, 515 U.S. 389 (1995). Thus, there can be no double jeopardy violation by a subsequent state court prosecution simply because the facts relating to the PIC fire were offered in aggravation of the sentence imposed on the Galaxy fire and obstruction charges in federal court.

8

Finally, the double jeopardy clause is not violated by a defendant's conviction in state and federal court when the offenses are not the same. The double jeopardy clause only applies when a person is twice prosecuted or punished for the "same offense." U.S. Const. Amend. V. In Blockburger v. United States, 284 U.S. 299 (1982), the Supreme Court set forth the definitive test for determining whether multiple prosecutions for a single act constitute prosecution for the same offense. Blockburger holds that the double jeopardy clause does not bar successive prosecutions for the same act, even when there is substantial evidentiary overlap, if each offense requires an element that the other does not. Id. at 304. See also Payne v. Virginia, 468 U.S. 1062 (1984).

In this case, a comparison of the crimes charged in counts 3 and 4 of the federal superseding information with the crimes charged in counts 1 through 4 of the state bill of indictment shows that the state statutory double jeopardy protection would not have prohibited a state court arson prosecution no matter what the plea agreement in federal court said, whether or not Mr. Tezak pled to counts 3 and 4, was convicted at trial of counts 3 and 4 or was acquitted at trial of counts 3 and 4.

The conspiracy charge contained in count 3 of the federal superseding information requires proof only of an agreement to commit one of the alleged offenses against the United States and an overt act in furtherance of the agreement. No actual destruction, fraud or obstruction need be proved. Count 4 requires proof that the property destroyed by fire was used in activities affecting interstate commerce. None of the state charges require proof of these facts. On the other hand, each of the state arson charges contained in counts I through V requires proof of a fact not required by the federal charges-- that property was destroyed by fire, was destroyed with the intent to defraud an insurer, was owned by another and that the property destroyed was of a value exceeding $150.

Therefore, the double jeopardy clause is not violated because Mr. Tezak was not punished twice for the "same offense."

For all of these reasons, we deny Mr. Tezak's claim that, because of the ineffective assistance of counsel, he was denied the constitutional protection of the double jeopardy clause.

2. Failure to Seek Agreement with State Prosecutors

We turn finally to Mr. Tezak's allegation that his counsel's conduct in connection with the plea agreement fell below the minimum standards for effective assistance of counsel required by the Sixth Amendment of the United States Constitution because he did not seek the agreement of Will County prosecutors not to prosecute Mr. Tezak for the state crimes which he admitted committing in the federal plea agreement. Mr. Tezak claims that Mr. Popuch promised that "all pending matters" would be resolved by pleading guilty to counts one, two and five. Moreover, he claims that Mr. Popuch advised him to admit the PIC fire even though he was not pleading guilty to the offenses relating to the admission and that he did not provide for an agreement with Will County not to prosecute. Finally, he claims that Mr. Popuch did not affirmatively tell him that he could be prosecuted by the state. However, Mr. Popuch testified that he did advise Mr. Tezak that he could be prosecuted by the state, and we find his testimony on this issue to be credible.

It is clear that, at the time Mr. Tezak voluntarily and intelligently entered his guilty plea, he had knowledge that he could not rely on the plea agreement to bar future prosecutions. The written plea agreement itself indicates that the plea agreement does not bar a state prosecution. This is on page one of the written agreement. The plea agreement specifically states that "this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as

10

expressly set forth in this Agreement." Thus, it is clear that Mr. Tezak was on actual notice that his plea agreement did not forbid a subsequent state court prosecution.

Moreover, this court verbally advised Mr. Tezak at the time of his guilty plea that the plea agreement did not protect him from state prosecution. The court read and explained the details of the plea agreement to Mr. Tezak. No plea colloquy could have been more complete or better calculated to ensure that a defendant's plea was knowing and voluntary. Mr. Tezak specifically acknowledged that he had read and understood the agreement and all of its parts and that he was satisfied with the agreement and his lawyers. Mr. Tezak asserted that his guilty plea was not based on any other promises or representations other than those contained in the guilty plea.

Furthermore, the October 25, 1993 memoranda contained in Webb Group Exhibit 1 makes it clear that Mr. Tezak had actual knowledge that future prosecutions could occur. In the October 25, 1993 Lombardi memo, Mr. Lombardi recounts his conversation of October 24, 1993 with Mr. Tezak. The day before the guilty plea was entered, he relates Mr. Tezak's specific concern that he might be prosecuted again even if he continued to cooperate with the government. Mr. Lombardi states: "I told him that there is nothing in the plea agreement, which he had already signed, that prevents Polales from prosecuting him if he continues to cooperate. He [Tezak] said that he understood what was in the plea agreement...." Mr. Lombardi goes on to recount that, prior to Mr. Popuch's appearance on the scene, Winston & Strawn had raised with the government the issue of future prosecutions based on corruption and wiretap offenses. The memo indicates that Mr. Polales refused to enter into such an agreement but that Mr. Polales had indicated that as a practical matter no indictment of the wiretap or corruption matter would occur. Thus, Mr. Tezak was well aware of the possibility of future prosecutions.

Finally, at the very next court appearance on November 5, 1993, an error in the plea agreement relating to the statutory maximum penalty was placed on the record and an amendment to the plea agreement was made limiting the sentence on count five to five years in prison. At this time Mr. Tezak was given the opportunity to withdraw his plea but chose to reaffirm it. In doing so, Mr. Webb took the time to note that he had been over the plea agreement with Mr. Tezak and that his firm had advised Mr. Tezak regarding the plea agreement.

Thus, based on the explicit language of the plea agreement, the court explanation of the plea agreement and information contained in the Webb Group Exhibits, we find that Mr. Tezak knew, or should have known, that it was possible that the state could prosecute him for the PIC fire.

Moreover, in the context of a guilty plea, a defendant is not entitled to § 2255 relief unless he can show that, but for the deficient advice, he would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); Gargano v. United States, 852 F.2d 886 (7th Cir. 1988). Mr. Tezak cannot show that, but for the alleged deficient advice, he would have insisted on going to trial.

Indeed, the October 15 and 25 Winston and Strawn memoranda demonstrate that Mr. Tezak wanted to plead guilty to the "Galaxy Bowl/Obstruction of Justice" counts and could only receive a plea agreement on those counts if he truthfully admitted the PIC fire. He came to the conclusion that he would admit the PIC fire in order to get that deal. There is nothing in any factual submission of Mr. Tezak that suggests another alternative was available to Mr. Tezak if he wanted the plea agreement which he told Mr. Webb he wanted on October 15, 1993. In other words, there is no reasonable probability that Mr. Tezak would have insisted on going to trial. Instead, he insisted on pleading guilty knowing that he could be prosecuted on additional offenses.

Mr. Webb indicated that Mr. Tezak wanted to work out a plea agreement and that plea negotiations became "much more intense following the revocation of the bond." It is clear from Mr. Webb's deposition testimony that the government had refused to consider entering into a plea agreement in the absence of a factual admission regarding the PIC fire and that even before Mr. Popuch began negotiations, Mr. Tezak did not want to plead to the PIC fire even if he admitted the facts.

In addition, Mr. Webb testified that he had reached an understanding of what a plea agreement with the government would look like prior to Mr. Popuch's entry on the scene. Mr. Webb indicated that his recollection was that he was trying to negotiate a plea agreement in which Mr. Tezak would plead guilty to the Galaxy Bowl because it was a pre-sentencing guidelines offense, while the PIC fire was subject to the guidelines. Mr. Webb also indicated that the government required admissions about the PIC fire as a condition of the agreement, and that it was not until October 2, 1993 that Mr. Tezak was willing to talk to the government on this issue.

It is clear from Mr. Webb's and Mr. Popuch's testimony, as well as Mr. Fleissner's affidavit that Mr. Tezak did want a plea agreement and that he wanted to minimize the impact of the guidelines. Again, the memorandum of Mr. Webb dated October 15, 1993 shows that Mr. Tezak was insistent that he wanted the "Galaxy Bowl/Obstruction of Justice deal."

Thus, in evaluating Mr. Popuch's representation, only one real question remains. Was Mr. Popuch's conduct unreasonable? Mr. Popuch has testified that he knows of many lawyers who practice in federal court and whose clients admit facts in pleading guilty that expose them to state court prosecutions that never seek to reach out to a state court prosecutor to negotiate a "global plea." After reading the plea agreement and noting that it did not bar future prosecutions, Mr. Lombardi

told Mr. Popuch he did a good job. First Assistant U.S. Attorney Gary Shapiro testified that the incidence of state court prosecutions following federal factual admissions that could serve as evidence of state crimes is so small that he cannot remember any. Moreover, there is no way the federal prosecutors can force the state to agree not to prosecute. For these reasons, Mr. Popuch was well aware of the possibility of seeking a formal agreement with the state, but he considered such an approach foolhardy from a tactical standpoint. As in Lane v. Singletary, 44 F.3d 943, 944-45 (11th Cir. 1994), it is not ineffective assistance to advise a plea agreement that could result in a subsequent prosecution when counsel had strong reason to believe no subsequent prosecution would ensue. Indeed, had Mr. Popuch tried to reach an agreement with the Will County prosecutors, he might have enhanced the chances of a state prosecution by calling the crime to the attention of local authorities.

Certainly Mr. Popuch's advice to plead guilty in this case to the plea agreement was within the realm of reasonable advice. Mr. Tezak suggests no reason to think that Mr. Popuch's advice fell below the minimum standard of representation required by the Sixth Amendment in this regard. Nowhere does Mr. Tezak assert that he did not know of the possibility that he could be prosecuted by the State. Nor does he assert that he would have gone to trial if Mr. Popuch had told him that an admission of the PIC fire facts might lead to a state prosecution. Finally, nowhere does Mr. Tezak suggest that the government would have offered him a plea agreement without an admission of facts relating to the PIC fire. These omissions are fatal to Mr. Tezak's amended petition.

Mr. Popuch's reasonable advice lessened Mr. Tezak's sentencing exposure on the federal charges by 15 years by accepting a plea agreement that did not require him to plead guilty to counts three and four of the superseding information. Mr. Tezak fails to explain how Mr. Popuch's alleged

14

error in failing to predict a state prosecution would have led to a different federal plea agreement. Indeed, as the Seventh Circuit has stated, an inaccurate prediction is insufficient to amount to ineffective assistance of counsel. Arvanitis, 902 F.2d at 494. This is the most that can be said of Mr. Popuch's assurance that a guilty plea would end all prosecution and allow Mr. Tezak to get on with his life.

In sum, Mr. Tezak was forcefully warned of the limitations and terms of this plea agreement in open court by the Court on the record. His voluntary plea of guilty cannot now be attacked by engaging in speculation that his lawyer would have been better off to plead Mr. Tezak to additional counts in order to bar state prosecution, or that a better lawyer would have negotiated a better deal that did not include Mr. Tezak's admission of the PIC fire. Mr. Tezak's only choice was trial, a path he did not want to take. Mr. Popuch's advice was sound. A plea cut his exposure to jail by 15 years, avoided potentially higher arson guidelines, and increased the chances of a reduction in the guidelines by accepting responsibility. In light of the massively incriminating evidence of Mr. Tezak's guilt in connection with the PIC fire, Mr. Tezak was well advised to plead guilty to the plea agreement in this case.

For these reasons, we find that Mr. Tezak has failed to show that he was denied effective assistance of counsel in connection with the decision to plead guilty.

B. The Appeal

An attorney's failure to perfect an appeal when the defendant has indicated a desire to appeal constitutes ineffective assistance of counsel. Clay v. Director Juvenile Division, Department of Corrections, 749 F.2d 427, 431 (7th Cir. 1984); Hollis v. United States, 687 F.2d 257, 259 (8th Cir. 1982), cert. denied, 459 U.S. 1221 (1983).

15

In this case, Mr. Tezak claims that he instructed his counsel, Mr. Popuch, to file an appeal. In his affidavit, Mr. Tezak states, "[f]ollowing my sentencing in the federal case (92 CR 652) on August 29, 1994, I instructed my counsel, Steven Popuch, to file an appeal. I did so on numerous occasions verbally and I also wrote him several letters to this effect, including correspondence dated August 4, 1994.... Despite my repeated instructions, Mr. Popuch did not file a Notice of Appeal. Mr. Popuch apparently felt that an appeal would be unsuccessful."

Mr. Tezak also offered the affidavits of two of his lawyers in support of his assertion. Attorney Cook's affidavit indicates that '[d]uring the sentencing...and subsequent to that time, he was advised by Mr. Tezak that Mr. Tezak desired for his criminal attorney, Steven Popuch, to take an appeal from the sentencing decision of the United States District Court which Mr. Tezak perceived as unfair and unlawful... On several occasions, Mr. Tezak informed [Mr. Cook] that Mr. Tezak had timely and repeatedly told his criminal attorney, Steven Popuch, to file a Notice of Appeal in the criminal proceeding." Affidavit of Cook, ¶ 4-5 . Mr. Tezak also submitted the affidavit of his attorney Paul Conant. Mr. Conant's affidavit indicates that Mr. Tezak's desire was to appeal his sentence if he was dissatisfied with the ultimate sentence pronounced at the conclusion of the sentencing. Affidavit of Conant ¶ 7.

Based on these assertions, the Court allowed discovery on this issue. The depositions of attorneys Webb, Popuch, Casey, and Shein were taken. Mr. Webb stated that Mr. Tezak never asked him to file a notice of appeal and never communicated to Mr. Webb a desire to appeal, but that at some point after the sentencing and the time for appeal had expired, Mr. Tezak had expressed some general complaint about the failure to file a notice of appeal. Mr. Webb specifically discounted the strength of this recollection, said it was a very general recollection and that he had no specific

recollection of Mr. Tezak complaining about Mr. Popuch in this regard. Mr. Popuch categorically denied that he had ever been asked to file a notice of appeal by Mr. Tezak.

Mr. Casey testified at his deposition that Mr. Tezak told him that he wanted a notice of appeal filed. Mr. Casey claims that he told Mr. Popuch that Mr. Tezak requested that a notice of appeal be filed. Mr. Casey presented copies of notes taken by him during visits with Mr. Tezak. The notes indicate that Mr. Tezak requested that an appeal be filed. Ms. Shein testified in her deposition that she advised Mr. Tezak after the sentencing that, in her opinion, there was no viable appeal. She advised Mr. Tezak that it was in his best interests to pay the restitution and pursue a Rule 35 motion. Ms. Shein testified that Mr. Tezak agreed with this proposition.

The Court then held an evidentiary hearing on the issue of whether Mr. Tezak's counsel ignored a direction to file a notice of appeal. Mr. Tezak declined the opportunity to testify, and no witnesses were called for the defendant. Mr. Casey did not testify at the hearing. Instead, the government presented the testimony of Steven Popuch. Mr. Popuch categorically denied that he had been asked to file a notice of appeal for Mr. Tezak and denied that his associate, Jim Casey, ever advised him that Mr. Tezak wanted an appeal filed.

Further evidence presented to the Court includes Susan Mahoney's memorandum of a conversation with Mr. Casey. Mr. Casey stated to Ms. Mahoney on September 7, 1994 that "they had not yet filed a Notice of Appeal, but that they planned to do so the next day, September 8th. He said that when it was filed, he would send us a copy. Casey said that he had discussed the appeal extensively with Bob in an attempt to convince him that there was no appealable issue. He indicated that he felt that Bob was in agreement, but that he wanted to file the Notice to be safe." Exhibit attached to Webb Deposition Transcript, Memorandum of Susan Mahoney dated September 9, 1994.

The evidence before the Court is conflicting, and we are forced to make a credibility determination. On the one hand, we have the testimony of Mr. Casey that Mr. Tezak told him that he wanted to appeal and that Mr. Casey forwarded this message to Mr. Popuch. On the other hand, we have the testimony of Mr. Webb and Mr. Popuch that Mr. Tezak never communicated to them his desire to appeal. In addition, Mr. Popuch denies that Mr. Casey ever told him that Mr. Tezak desired to appeal. Ms. Shein's testimony indicates that she discussed the issue of appeal with Mr. Tezak and that Mr. Tezak agreed with her that he should pursue a Rule 35 motion rather than an appeal because there were no viable issues for appeal.

In evaluating the conflicting evidence, we can only draw the reasonable conclusion that, as Mr. Popuch and Ms. Shein testified, immediately after sentencing, Mr. Tezak had agreed to forego the appeal in favor of the Rule 35 motion. Mr. Tezak initially accepted Mr. Popuch's and Ms. Shein's tactical advice to quickly make restitution and seek a reduction after demonstrating remorse and acceptance of responsibility to this Court. Even on September 7, 1994, Mr. Tezak was still in agreement that no appeal should be taken.

However, on September 15, 1994, to be on the safe side, Mr. Casey filed a motion to extend the time for filing a notice of appeal. In that motion, Mr. Tezak's lawyers, Mr. Casey and Mr. Popuch, erroneously stated that the date of the final judgment was August 5, 1994, instead of the actual date on which the judgment was entered on the record, August 10, 1994. This Court denied the motion due to its apparent untimeliness and because it made no showing of excusable neglect. The only reasonable conclusion we can draw is that Mr. Tezak had agreed to forego the appeal in favor of the tactically more sound and potentially much more expeditious reduction that could be sought pursuant to Rule 35, as he was advised by Mr. Popuch and Ms. Shein.

Mr. Tezak has only the support of the one lawyer familiar with the facts of the case, Mr. Casey. We find that the testimony of Mr. Casey is not credible. Mr. Casey's deposition demonstrates that he has a bias against Mr. Popuch. Mr. Popuch testified that Mr. Casey forged a check stolen from Mr. Popuch. Mr. Casey refused to answer questions relating to his theft of property and forgery of checks while employed by Mr. Popuch. Thus, there is an explanation as to why Mr. Casey is biased against Mr. Popuch-- because Mr. Casey stole from Mr. Popuch and Mr. Casey later abandoned his practice and law license. Therefore, we do not credit Mr. Casey's testimony on the notice of appeal issue.

In evaluating the evidence, we do not believe that Mr. Tezak's lawyer's failure to file a timely notice of appeal in spite of his repeated requests would have resulted in a multi-year period of silence by Mr. Tezak. We note that he made no public complaint that his lawyers had failed to file a notice of appeal on his behalf, even though he had the opportunity and every reason to do so during and before his presentation, argument, and court appearance with Mr. Popuch and Mr. Webb on his Rule 35 motion. Mr. Tezak, an active client, could easily have complained while there was still time about Mr. Popuch's alleged failure to file a notice of appeal. It is clear that following such a disappointment, the files of Mr. Webb, Mr. Popuch, and Ms. Shein would have been filled with written recriminations regarding this failure on the part of Mr. Popuch.

In evaluating the strength of Mr. Tezak's written affidavit, we should consider the fact that Mr. Popuch's file contains numerous pieces of correspondence from Mr. Tezak regarding all of the strategies and tactics of his case, yet the August 4, 1994 letter from Bob Tezak to "Steve" requesting that his appeal be filed is not in Mr. Popuch's case file. We believe that Mr. Tezak never sent it to Mr. Popuch.

Finally, although we are mindful of the recent Supreme Court opinion in Roe v. Flores-Ortega, 120 S. Ct. 1029 (Feb. 23, 2000) and the Seventh Circuit's opinion in Castellanos v. United States, 26 F.3d 717 (7th Cir. 1994), we must point out that Mr. Tezak had little chance of success on appeal. Mr. Tezak claims that he desired to appeal the consecutive nature of his sentence and the three-point enhancement applied in connection with the Sentencing Guidelines calculations pertaining to count 5. Two of the counts which Mr. Tezak pled guilty to are pre-Guidelines offenses. Appellate review of a district court's sentencing decision is extremely narrow in pre-Guidelines cases. United States v. Crabtree, 37 F.3d 318, 320 (7th Cir. 1994); United States v. McClain, 2 F.3d 205, 206 (7th Cir. 1993). The Seventh Circuit will affirm a sentence that is within the statutory limits unless "the court based the sentence upon improper considerations or unreliable information in exercising its discretion or failed to exercise any discretion at all in imposing the sentence." United States v. Lewis, 910 F.2d 1367, 1373 (7th Cir. 1990). Therefore, it is unlikely that Mr. Tezak would have prevailed on appeal.

In sum, the credible evidence in this case indicates that Mr. Tezak waived his right to appeal and never decided to take an appeal until after the time for filing the notice of appeal had expired. As a result, Mr. Casey then filed a late notice of appeal. We find that Mr. Tezak has failed to credibly show that he asked Mr. Popuch to appeal the sentence or that Mr. Popuch refused to do so.

In conclusion, this Court is convinced that Mr. Tezak received extraordinarily competent representation and that his sentence in all respects was the appropriate one given his criminal behavior. Therefore, the requested relief on this count of the § 2255 petition is denied.

## II. LACK OF JURISDICTION

Finally, Mr. Tezak claims that he is entitled to relief because the court lacked jurisdiction over this case. The amended petition recites that the factual basis for the guilty plea on counts one and two included the admission that the bowling alley was used in activities which affected interstate commerce through the operation of a business that regularly sold beverages and used supplies and materials produced outside the State of Illinois. The amended petition claims that "this Court does not have jurisdiction over a violation of 18 U.S.C. 844(i) unless a substantial impact on interstate commerce is established." Mr. Tezak asserts that the "mere obtaining of material from outside the state in connection with a purely intrastate business activity is insufficient to establish the required substantial impact on interstate commerce." Based on these allegations, the amended petition asks that the Court set aside Mr. Tezak's plea on counts one and two because the Court lacked jurisdiction.

Such a claim gives rise to a right to relief in the context of a guilty plea only when on the "face of the record [it is clear that] the court had no power to enter the conviction or impose the sentence." United States v. Broce, 488 U. S. 563, 569 (1989). In this case, the Court clearly had subject matter jurisdiction over the crime charged in the indictment. The jurisdictional basis for the exercise of the Court's power over Mr. Tezak was the return of an indictment and the subsequent filing of a superseding information, to which Mr. Tezak consented in open court, charging him with all of the elements of five federal crimes. Congress authorized prosecution of individuals for violations of 18 U.S.C.§§ 371 and 844(i). Counts one and two of the superseding information properly charged all of the essential facts constituting these offenses. See Fed. R. Crim. P. 7(c)(1). As a result, this Court had subject matter jurisdiction over the case pursuant to 18 U.S.C. § 3231.

Mr. Tezak next generally argues that 18 U.S.C. § 844(i) is unconstitutional, but he offers no support for this proposition. We find that this argument is waived because it was not raised by Mr. Tezak in any pre-trial motions. Rule 12 requires that attacks upon an indictment based on a facial defect be raised prior to trial or guilty plea. Mr. Tezak did not do so. He cannot attack the constitutionality of the statue in a collateral proceeding. However, even if he could, United States v. Russell, 471 U.S. 858 (1985) is controlling. It holds that Congress intended to exercise its full power under the commerce clause in enacting 844(i). In so holding, the Russell court indicated that 844(i), requiring that the government prove an affect on commerce was constitutional on its face. Russell went further and decided that arson of rental real property without more, did, in fact, affect interstate commerce and could constitutionally be criminalized.

Mr. Tezak attacks the constitutionality of the statute by pointing to the decision in United States v. Lopez, 514 U.S. 549 (1995). According to Mr. Tezak, Lopez prohibits Congress from criminalizing any act that does not itself have a substantial effect on commerce. Thus, § 844(i) could not constitutionally be applied to an arson which had an actual but de minimis effect on commerce. The Seventh Circuit has rejected this reading of the Lopez decision in United States v. Hicks, 106 F.3d 187 (7th Cir. 1997), United States v. Wing, 104 F.3d 986 (7th Cir. 1997) and United States v. Martin, 63 F.3d 1422 (7th Cir. 1995). As these decisions held, Congress can criminalize any conduct that has an actual or potential "de minimis" effect on commerce as long as the crime requires such an effect as an element. In the context of the arson statute, the activity regulated is the burning of property used in or affecting commerce and "it doesn't take any fancy intellectual footwork to conclude that the aggregate effect of such arsons on commerce is substantial." Hicks, 106 F.3d at 192. Thus, as in Hicks, the Galaxy Bowl fire implicated out of state insurance

companies and a business that bought supplies from out of state. Certainly, as a matter of fact, a business that "regularly" sells beverages and uses material and supplies manufactured outside the state of Illinois has "by itself" a substantial impact on interstate commerce. However, as a class, bowling alleys by the thousands are engaged in such activity nationwide. Thus, as in <u>Hicks</u>, the commerce element was constitutionally satisfied.

The only conceivable way to avoid the apparent limitation on Mr. Tezak's attempted collateral attack imposed by <u>Broce</u> would be to complain about the ineffective assistance of counsel in connection with the failure to advise defendant to try the case and challenge the commerce element. However, Mr. Tezak does not suggest that Mr. Popuch was ineffective in allowing him to plead guilty to this criminal conduct because of a commerce clause defense. Mr. Tezak has offered no claim, argument or other information in support of this ground for relief. In addition, as Mr. Webb has testified, interstate commerce was not viewed as a viable factual defense to the charges in preparing for trial, and he could think of no reason to criticize the plea agreement in this regard. Webb Deposition, Tr. 29-30.

For all of these reasons, Mr. Tezak's claim that the Court lacked jurisdiction is denied.

## CONCLUSION

For the foregoing reasons, the amended § 2255 habeas corpus petition brought by Robert Tezak is denied. Mr. Tezak's motion to recuse this Court also is denied. This is a final and appealable order.

Wayne R. Andersen
United States District Judge

Dated: *May 18, 2000*